IN THE

# United States Court of Appeals for the Federal Circuit

———————————

NATIONAL VETERANS LEGAL SERVICES PROGRAM, NATIONAL
CONSUMER LAW CENTER, and ALLIANCE FOR JUSTICE,

*Plaintiffs-Appellants,*

v.

UNITED STATES,

*Defendant-Cross-Appellant.*

———————————

On Appeal from the United States District Court for the District of Columbia in
No. 1:16-745-ESH, Judge Ellen S. Huvelle

———————————

**BRIEF OF NEXT-GENERATION LEGAL RESEARCH PLATFORMS
AND DATABASES AS *AMICI CURIAE* IN SUPPORT OF
PLAINTIFFS-APPELLANTS**

———————————

Phillip R. Malone
Juelsgaard Intellectual Property and
  Innovation Clinic
Mills Legal Clinic at Stanford Law School
559 Nathan Abbott Way
Stanford, CA 94305
(650) 725-6369
pmalone@law.stanford.edu

*Attorney for Amici Curiae*

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

*National Veterans Legal Services Program, et al., v. United States*

Case Nos. 19-1081(L), 19-1083

**CERTIFICATE OF INTEREST**

As required by Federal Circuit Rule 47.4, counsel for amici Next-Generation Legal Research Platforms and Databases certifies the following:

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT indentified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10% or more of stock in the party |
|---|---|---|
| Casetext | None | None |
| Docket Alarm | None | Fastcase (100%) |
| Fastcase | None | None |
| Free Law Project | None | None |
| Internet Archive | None | None |
| Judicata | None | None |
| Justia | None | None |
| Mark A. Lemley | N/A | N/A |
| Ravel | None | LexisNexis (100%) |
| Syntexys | None | None |
| UniCourt | None | None |

4. The names of all law firms and the partners or associates that appeared for amici now represented by me in the trial court or agency or are expected to appear in this court (**and who have not or will not enter an appearance in this case**) are:

Philip R. Malone
Juelsgaard Intellectual Property and Innovation Clinic
Mills Legal Clinic at Stanford Law School

5. Counsel is unaware of any cases pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. See Fed. Cir. R. 47. 4(a)(5) and 47.5(b).

Dated: January 23, 2019

*/s/ Phillip R. Malone*

Phillip R. Malone

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST............................................................  i

TABLE OF AUTHORITIES............................................................. iii

INTEREST OF AMICI................................................................  1

SUMMARY OF ARGUMENT...........................................................  4

ARGUMENT........................................................................  6

I.    PACER Fees Are Excessive and Violate the E-Government Act...............  6

    A.   Instead of Lowering PACER Fees and Improving Access to Public Records as Congress Intended, the Administrative Office of the Courts Has Raised PACER Fees.........................................  6

    B.   Current PACER Fees Far Exceed the Cost of Providing the Service..  7

II.   High PACER Fees Prevent Innovation of Legal Research Tools and Limit Access to Public Information....................................................  8

    A.   Excessive PACER Fees for Searching Dockets in PACER Curtail Legal Research...................................................  9

    B.   Excessive PACER Fees for Document Retrieval Stifle Cutting-Edge Developments in Legal Research.......................................11

    C.   Excessive PACER Fees Hinder the Development of Tools That Would Improve the Practice of Law and Provide Equal Access to Justice...............................................................17

CONCLUSION......................................................................21

# TABLE OF AUTHORITIES

**Statutes**                                                                    **Page(s)**

28 U.S.C. § 1913 note ...................................................................................6, 7

**Legislative Materials**

S. Rep. 107-174 (2002) ...............................................................................6, 21

**Other Authorities**

Adam Feldman, *Follow the Experts: Framing Petitions for Cert*, Empirical
    SCOTUS (Nov. 19, 2018),
    https://empiricalscotus.com/2018/11/19/follow-the-experts/ ...................20

Chief Justice John Roberts, *2014 Year-End Report on the Federal Judiciary*
    (2014), https://www.supremecourt.gov/publicinfo/year-end/2014year-
    endreport.pdf ............................................................................................6

Docket Alarm, PTAB Analytics Page, https://www.docketalarm.com/
    welcome/ptab-analytics (last visited Jan. 23, 2019) .................................14

DOJ PACER Expenditure & Allotment Rep. (run on Feb. 23, 2018),
    https://free.law/pdf/doj-pacer-totals.pdf ..................................................18

Free Law Project, *A Complete Chronology of PACER Fees and Policies*
    (Apr. 13, 2017), https://free.law/2017/04/13/a-complete-chronology-
    of-pacer-fees-and-policies/ .......................................................................7

Free Law Project, *Downloading Important Cases on PACER Costs More
    than a Brand New Car* (Nov. 17, 2017),
    https://free.law/2016/11/17/downloading-important-cases-on-pacer-
    costs-more-than-a-brand-new-car/ ..........................................................18

Free Law Project, *Facts About Pacer* (last visited Dec. 12, 2018),
    https://free.law/pacer-facts/#what-if-i%E2%80%99m-a-government-
    employee-say-at ......................................................................................18

Free Law Project, *Advanced RECAP Search*, Court Listener,

https://www.courtlistener.com/recap/ (last visited Jan. 23, 2019) ...........12

Free Law Project, *The Cost of PACER Data? Around One Billion Dollars* (Oct. 10, 2016), https://free.law/2016/10/10/the-cost-of-pacer-data-around-one-billion-dollars/ ....................................................................15

Free Law Project, *What is the "Pacer Problem"?* (Mar. 20, 2015), https://free.law/2015/03/20/what-is-the-pacer-problem/ .........................18

Harry Surden, *Machine Learning and Law*, 89 Wash. L. Rev. 87 (2014) .......14

Letter from Brewster Kahle, Dig. Librarian & Founder, Internet Archive, to Reps. Darrell Issa, Chairman, & Jerry Nadler, Ranking Member, Subcommittee on Courts, Intellectual Property, and the Internet (Feb. 10, 2017), http://www.openpacer.org/files/Internet_Archive _PACER_Letter.pdf ....................................................................8

Letter from Sen. Joseph I. Lieberman to J. Lee H. Rosenthal (Feb. 27, 2009) ............................................................................6, 7

Letter from Sen. Joseph I. Lieberman to Sens. Richard Durbin & Susan Collins (Mar. 25, 2010) .............................................................7

Lex Machina, *Legal Analytics Platform*, https://lexmachina.com/legal-analytics/ (last visited Jan. 23, 2019) ........14

PACER, *Frequently Asked Questions*, https://www.pacer.gov/psc/faq.html .....9

Robert Ambrogi, *Upsetting the Applecart of Legal Research*, Above the Law (May 15, 2017, 6:15 PM), http://abovethelaw.com/2017/05/upsetting-the-applecart-of-legal-research/?rf=1 ........................................9

# INTEREST OF AMICI

Amici are nonprofit and for-profit developers of next-generation legal technology, legal research, and legal analytics, and public knowledge databases that provide innovative tools and services for the legal community and the public.[1] These tools serve the public interest by transforming the ways in which the public, courts, law firms, and lawyers access, understand, and utilize the law.[2]

Amicus Casetext is a legal technology company that provides information and research services to litigators, leveraging artificial intelligence and the expertise of the legal community to provide equal access to justice. Its CARA software automates legal research tasks with artificial intelligence and machine-learning technologies to analyze litigation documents and algorithmically query federal and state law.

Amicus Fastcase is a legal technology company that provides tools to make research easier and more intuitive for lawyers, law firms, and bar associations in the United States. Fastcase allows legal researchers to see suggested search terms through a case law map, provides unrestricted search results, suggests cases a researcher may have missed, and outlines case connections with an interactive timeline of case history. Amicus Docket Alarm, owned by Fastcase, is a legal

---

[1] No party or party's counsel authored any part of this brief or contributed money towards its preparation or submission. No one, other than amici and their counsel, contributed money towards the preparation or submission of this brief. Pursuant to Fed. R. App. P. 29(a)(2), all parties have consented to the filing of this brief.

[2] Amici wish to thank Stanford Law School Juelsgaard Intellectual Property and Innovation Clinic Certified Law Students Aletha Smith, Julia Greenberg, and Reid Whitaker for their substantial assistance in drafting this brief.

technology company that provides docket analytics and case tracking for attorneys across many jurisdictions. Docket Alarm provides full-text search of cases and predictive analytics for the Patent Trial and Appeal Board, federal courts, and state courts. Attorneys can also sign up to receive alerts on docket updates through Docket Alarm's real-time tracking system.

Amicus Free Law Project is a nonprofit organization seeking to create a more just legal system. To accomplish that goal, Free Law Project provides free, public, and permanent access to primary legal materials on the Internet for educational, charitable, and scientific purposes. Its work empowers citizens to understand the laws that govern them by creating an open ecosystem for legal materials and research. Free Law Project also supports academic research by developing and providing public access to technologies useful for research.

Amicus Internet Archive is a public nonprofit organization that was founded in 1996 to build an Internet library, with the purpose of offering researchers, historians, scholars, artists, and the general public permanent access to historical collections in digital format. Located in San Francisco, California, the Internet Archive receives data donations and collects, records, and digitizes material from a multitude of sources, including libraries, educational institutions, government agencies, and private companies. The Internet Archive then provides free public access to its data, including text, audio, video, software, and archived web pages.

Amicus Judicata "maps the legal genome" and provides research tools to turn unstructured case law into structured and easily digestible data. Judicata's color-mapping research tool transforms how people interact with the law: it

increases reading comprehension and speed, illuminates the connections among cases, and makes the law more accessible to lawyers and nonlawyers.

Amicus Justia works to advance the availability of legal resources for society. It is committed to making legal records free and easily available on the Internet. It provides Internet users with free case law, codes, regulations, legal articles, and other legal resources. Justia works with educational, public interest, and other organizations to make legal information easily available online.

Amicus Mark A. Lemley is the William H. Neukom Professor at Stanford Law School and the Director of Stanford's Program in Law, Science, and Technology. He was a co-founder of Lex Machina, a legal analytics company that makes data and analysis about federal court filings and decisions available to law firms, companies, and courts. Lex Machina was acquired by LexisNexis in 2015.

Amicus Ravel is a platform that empowers attorneys to go beyond conventional research using artificial intelligence and data visualization. Ravel provides innovative features, including case law maps, technology that identifies key passages in cases, and judge, court, motion, and law firm analytics. Ravel's effectiveness depends on having access to comprehensive, authoritative, and up-to-date primary legal information, particularly statutes and case law.

Amicus Syntexys is a legal informatics startup that analyzes large volumes of contracts. Syntexys uses machine learning and statistical natural language processing to provide business insights, mitigate risk, and predict contract outcomes.

Amicus UniCourt is a legal technology company dedicated to organizing court records to make them universally accessible and useful. Leveraging the latest advances in machine learning, indexing, and other technologies, UniCourt provides attorneys, businesses, and consumers with access to case research, docket searching, case tracking, document downloads, legal analytics, and bulk access to court data through their Legal Data APIs. In addition to all U.S. Courts of Appeals, U.S. District Courts, and U.S. Bankruptcy Courts, Unicourt also provides access to several state courts, including California, Florida, Texas, Arizona, and Nevada. UniCourt is committed to making all court records available to the public and just a Google search away.

## SUMMARY OF ARGUMENT

The Administrative Office of the U.S. Courts' (AO) policy of charging excessive fees for the Public Access to Court Electronic Records system (PACER) violates the law and unduly limits access to public filings. Congress passed the E-Government Act for the purpose of making court documents accessible to the public. The AO's fee policy contravenes the Act's clear statutory language and Congress's intent by charging fees well beyond what is necessary for reimbursing expenses of the PACER system.

The excessive PACER fees charged by the AO significantly limit the expansion of legal research technology that would improve the practice of law and provide more cost-effective access to justice. First, uncapped search fees limit the ability of attorneys, academics, litigants, policymakers, and the public from tracking cases and learning from the wealth of information contained in PACER's

public records. Second, high document retrieval fees stifle the growth of legal tools to help researchers better find relevant case law through improved basic search, intelligent search, and predictive analytics legal tools.

A key requirement for better research tools is a comprehensive collection of publicly filed documents. Without such a data set, legal technology companies cannot ensure their clients that search results and statistical analytics are complete. Incomplete data sets lead to systematic biases in results. And yet, with more than one billion documents in the PACER database, the cost of buying the entire public record is prohibitive for legal startups like amici.

As a result, the excessive PACER fees for search and retrieval of publicly filed federal court documents exert a significant social cost. Fees limit access to public documents, stifle competition in the legal research market, hinder the development of tools that would improve the practice of law, and curtail affordable access to justice. An entire ecosystem of legal technology startups would crop up to help ease this burden placed on attorneys, litigants, academics, policymakers, and the public if the AO fulfilled its congressional mandate to make court records "freely available to the greatest extent possible."

## ARGUMENT

### I. PACER Fees Are Excessive and Violate the E-Government Act

#### A. Instead of Lowering PACER Fees and Improving Access to Public Records as Congress Intended, the Administrative Office of the Courts Has Raised PACER Fees

As Chief Justice John Roberts recognized, "[t]he judiciary has a special duty to ensure, as a fundamental matter of equal access to justice, that its case filing process is readily accessible to the entire population . . . ." Chief Justice John Roberts, *2014 Year-End Report on the Federal Judiciary* 9 (2014), https://www.supremecourt.gov/publicinfo/year-end/2014year-endreport.pdf. Congress enacted the E-Government Act to further this "special duty" of the judiciary to make court records "freely available to the greatest extent possible." S. Rep. 107-174, at 23 (2002).

While the E-Government Act permits the Administrative Office of the U.S. Courts (AO) to charge "for electronic access to information," the AO may "only [charge] to the extent necessary . . . to reimburse expenses in providing these services." 28 U.S.C. § 1913 note. Congress's addition in 2002 of the limiting language "only to the extent necessary" was a direct response to the AO's practice of "charg[ing] fees that are higher than the marginal cost of disseminating the information." S. Rep. 107-174, at 23 (2002); *see also* Letter from Sen. Joseph I. Lieberman to J. Lee H. Rosenthal 1 (Feb. 27, 2009). The legislative history explicitly states the AO should lower fees for the Public Access to Court Electronic Records system (PACER). S. Rep. 107-174, at 23 (2002).

Yet, instead of lowering the fees for PACER, the AO raised them—even as the drafters of the E-Government Act asked the AO to reduce fees under the "mandate" of the Act. Letter from Sen. Joseph I. Lieberman to Sens. Richard Durbin & Susan Collins 2 (Mar. 25, 2010); *see also* Letter from Sen. Joseph I. Lieberman to Judge Lee H. Rosenthal 1 (noting the goal of the E-Government Act was "to increase *free* public access to [court] records" (emphasis added)).[3]

### B. Current PACER Fees Far Exceed the Cost of Providing the Service

The AO is contravening the E-Government Act's clear statutory language and Congress's intent by charging PACER fees well beyond what is necessary for "reimburs[ing] expenses." 28 U.S.C. § 1913 note; Free Law Project, *A Complete Chronology of PACER Fees and Policies* (Apr. 13, 2017), https://free.law/2017/04/13/a-complete-chronology-of-pacer-fees-and-policies/. The judiciary collected $146.4 million in PACER fees in 2016, representing an amount far above the reasonable cost of such a system. Dkt. 52-13 at 17. If PACER used Amazon Web Services, a cloud computing service used by Netflix, NASA, and other major government and technology organizations to host large websites, PACER's yearly storage and service costs would be a mere "$227,399.84, or 0.16% of PACER's reported 2016 fee revenue." Lee and Lissner Decl. at ¶ 28 (Dkt. 52-15).

Amici estimate operating PACER should cost no more than $10 million annually, including storage, maintenance, and support services, with the bulk of expenses going toward support costs. Amicus Free Law Project hosts its RECAP

---

[3] In comparison, other publicly filed documents including Supreme Court filings, SEC filings, and Patent and Trademark Office filings are publicly available online for free.

database at a far lower cost and could make *all* PACER documents easily searchable if documents were available for free. Similarly, in 2017, amicus Internet Archive publicly announced a standing offer to host the full PACER database publicly for free if granted no-fee access to PACER's records. Letter from Brewster Kahle, Dig. Librarian & Founder, Internet Archive, to Reps. Darrell Issa, Chairman, & Jerry Nadler, Ranking Member, Subcommittee on Courts, Intellectual Property, and the Internet (Feb. 10, 2017), http://www.openpacer.org/files/Internet_Archive _PACER_Letter.pdf. Meanwhile, the AO continues to charge fees that far exceed the cost of providing the service.

PACER violate the E-Government Act by functioning as a profit center, creating significant barriers to the access of public documents. PACER's excessive fees are not simply illegal; they cause considerable harm by unnecessarily burdening attorneys, libraries, researchers, and the public. These burdens are exacerbated because PACER's fees also prevent legal innovators and developers like amici from creating new user-friendly tools that would streamline legal research, facilitate case tracking, and improve access to public legal documents for professionals and the general public alike.

## II.  High PACER Fees Prevent Innovation of Legal Research Tools and Limit Access to Public Information

The excessive PACER fees charged by the AO significantly limit the expansion of legal research technology that would improve the practice of law and provide more cost-effective access to justice for all. While recent developments in computer science lay the groundwork for advances in legal research technology,

the potential they create for "the golden age of legal research innovation" has not been realized due to the excessive costs of accessing public records through PACER. Robert Ambrogi, *Upsetting the Applecart of Legal Research*, Above the Law (May 15, 2017, 6:15 PM), http://abovethelaw.com/2017/05/upsetting-the-applecart-of-legal-research/?rf=1. Legal technology developers like amici use the latest computer science techniques to classify, store, analyze, and disseminate legal knowledge through new research and analytics products that empower constituents—judges, attorneys, academics, litigants, and the public—to better understand and apply the law. Developers like amici, however, could do far more if excessive PACER fees did not block innovation.

## A. Excessive PACER Fees for Searching Dockets in PACER Curtail Legal Research

Search fees limit constituents' ability to track judicial proceedings. PACER charges $0.10 per-page for "the number of pages that result from each search." PACER, *Frequently Asked Questions*, https://www.pacer.gov/psc/faq.html. For example, if a user searches the party name "Johnson, T" and receives two pages of matches, she will be charged $0.20. *Id.* If she then opens the Docket Report on a specific case, she will be charged an additional $0.10 for every page in the docket, even prior to opening any documents. Search costs are uncapped, so if "Johnson, T" returned 1,000 pages of search results, a user would be charged $100 for that search. *Id.* This is frequently the case for common names.[4] For time sensitive needs, like monitoring a high profile commercial case, amici like Docket Alarm

---

[4] Case-specific reports like Docket Reports are capped at $3.

and UniCourt may search a case's docket for updates frequently, anywhere from a few times an hour to a few times a minute. But such PACER searches are extremely costly.

These fees are especially concerning as there is no way to preview the costs of a search. Individuals can accumulate large fees on mistaken searches, especially ones that are accidentally overbroad. Searches can also be prohibitively expensive if a user does not know the party name or case number.

The expense of searching limits the public's ability to learn from the wealth of information contained in PACER's public records. For example, amicus Syntexys can analyze a customer's contracts for potential risks. To do so, it trains its machine-learning system on a set of collected contracts. But to train its system, Syntexys needs thousands of contracts. While the SEC's EDGAR database provides free access to a narrow selection of contracts from large publicly traded companies, Syntexys has struggled to collect a more diverse set of contracts for training. If not for its exorbitant cost, the thousands of contract disputes in PACER would be an ideal source for this diversity. However, searching PACER for contracts is prohibitively costly and difficult, particularly without party names and case numbers.

PACER fees for search also limit legal research that would guide practitioners and policymakers. Comprehensive text search of the federal judicial data set is essential to uncover trends, correlations, and patterns in federal litigation. But PACER fees for search restrict researchers' ability to review necessary cases. For example, a researcher working with amicus Free Law Project sought to study

correlations between sexual harassment claims and certain corporate governance aspects of public companies.  The researcher, however, has been unable to begin her study because basic searches to retrieve relevant cases are prohibitively expensive.[5] Even if researchers are able to pay tens of thousands of dollars in fees, PACER's limited search functions leave them unable to ascertain whether they have all filings on a relevant subject matter.

Without excessive PACER fees for basic searching, an entire ecosystem of legal technology startups would crop up to provide tools for constituents that would allow them to closely track a wider range of lawsuits.  Reporters and private citizens too would be better able to track lawsuits of national and local concern.

### B. Excessive PACER Fees for Document Retrieval Stifle Cutting-Edge Developments in Legal Research

While PACER document retrieval fees are capped at $3 per document, these fees add up quickly.  Excessive document retrieval fees limit access and unnecessarily burden innovators looking to provide new legal research and analytics capabilities to the public.  Constituents suffer both because they must pay excessive PACER fees and because they lose out on the potential benefits of innovative new products and services.  Future innovation in basic search tools, intelligent

_____

[5] Though academic researchers can, in theory, obtain fee waivers for research purposes, studies that include all district courts require fee waivers, many separately at their own discretion.  Such waivers are limited to the specific project.  At least some amici have had fee waivers turned down by districts (for example, the Eastern District of Texas in patent cases) that did not see transparency as a virtue.  This process of contacting and corresponding with many courts is prohibitive for some would-be researchers.  Additionally, researchers are prohibited from sharing the information they receive through such waivers, making research non-replicable.

search tools, and advanced analytics are among the important advancements in legal research slowed due to excessive PACER fees. Innovators like amici working to develop these technologies need databases of hundreds of thousands or even millions of documents to ensure effective tools. At this scale, even a cost of $3 per document stifles innovation.

1. *High Document Retrieval Fees Curtail the Development of Basic Search, Intelligent Search, and Predictive Analytics Legal Tools*

PACER does not offer basic search tools: A user cannot search by judge, law firm, or a keyword within a docket or document.[6] While many innovators are prepared to offer basic search functionality, they need access to the entire PACER database. Amicus Free Law Project has tried to make PACER documents more easily available through its RECAP tool. RECAP allows users to share any documents for which they have paid. Those documents are then made searchable and available to the public for free in a database. Free Law Project, *Advanced RECAP Search*, Court Listener, https://www.courtlistener.com/recap/ (last visited Jan. 23, 2019). However, even with millions of documents, the RECAP database contains only a fraction of the documents available on PACER. Thus, RECAP users can never be certain that a keyword search for cases will be complete.

Basic search functionality is only the beginning: Legal technology innovators are developing intelligent search tools to bring the full range of modern research techniques to the legal sphere. However, excessive PACER fees prevent

_____
[6] While PACER allows you to search for "type" of case, the list of possible "nature of suit" designations and their application to different cases varies widely across different district courts.

12

companies from providing these services and developing further advancements in legal research technology.

Intelligent search tools include products like amicus Casetext's CARA tool, which provides a user with relevant cases mere seconds after uploading a brief or complaint. The system automatically analyzes the language in the document to find relevant case law not cited in the original document that might otherwise be missed with traditional case law searches.

Complex search-data visualization can also provide useful insights for attorneys. For example, amicus Fastcase has integrated its visual timeline tool with search results, quickly highlighting the network of citations in judicial opinions and helping researchers identify the most relevant cases at the top of their search results. Similarly, amicus Ravel provides search maps that display relevant cases cited in different courts to make it easy to find the most important cases for a brief.



In addition to intelligent search tools, many innovators use statistical analytics and machine learning[7] to develop tools that provide predictive information for lawyers. For example, an attorney might want to determine how likely a judge is to rule a particular way on a given motion at a given stage of litigation, or how likely a particular opposing party is to settle in a given kind of case. Amicus Ravel provides compiled statistics to show, for example, how many motions to dismiss have been ruled on by the Southern District of New York, and the outcomes of those rulings. Similar statistics are available broken down by judge, court, and law firm; legal technology companies Lex Machina and amicus Docket Alarm can show a user how successful a party has been in different courts on specific types of motions. Lex Machina, *Legal Analytics Platform*, https://lexmachina.com/legal-analytics/ (last visited Jan. 23, 2019); Docket Alarm, PTAB Analytics Page, https://www.docketalarm.com/welcome/ptab-analytics (last visited Jan. 23, 2019).

### 2. The Prohibitive Cost of Accessing PACER Documents Stifles the Innovation that Requires Comprehensive Document Databases

To provide basic search, intelligent search, and analytic tools, legal informatics companies need comprehensive collections of documents. Customers want to be assured that their search results will include all relevant information and that statistical analytics are accurate. Additionally, many of these products

---

[7] Machine learning is "a subfield of computer science concerned with computer programs that are able to learn from experience and thus improve their performance over time." Harry Surden, *Machine Learning and Law*, 89 Wash. L. Rev. 87, 89 (2014). Such computing is particularly suited to automate tasks that involve "detecting patterns and inferring rules from data," including statistical tasks such as historical analysis and predictive modeling. *Id.*

using underlying tools like natural language processing and machine learning need thousands or even millions of examples to train algorithms to recognize otherwise hidden insights. Indeed, incomplete data sets can lead to systematic biases in results. Obtaining the requisite data directly from PACER is incredibly costly. With more than one billion documents in the PACER database, a best guess estimate is that it would cost $1 billion for each new company to purchase all of the public court records on PACER, not to mention millions more in annual costs to maintain a complete and up-to-date database. Free Law Project, *The Cost of PACER Data? Around One Billion Dollars* (Oct. 10, 2016), https://free.law/2016/10/10/the-cost-of-pacer-data-around-one-billion-dollars/.

Such an insurmountable expense forces innovators to narrow their analytics to limited subject areas, to reduce the specificity and power of their tools, or to partner with their biggest competitors to acquire sufficient data. Lex Machina, for example, initially developed its analytics platforms exclusively for patents, because PACER fees made acquiring documents in other legal areas prohibitively costly. Only after it was acquired by LexisNexis, one of the largest legal research companies, was Lex Machina able to expand beyond IP law.

Other innovators simply choose to avoid using PACER entirely due to the high costs of accessing federal records. Amicus Judicata offers a "color" tool that highlights all cited cases in a given opinion or brief based on the treatment in subsequent history. It also offers a "clerk" tool that allows law clerks to evaluate the relative strength of a submitted party brief. Because high PACER costs made including federal records impractical, Judicata currently includes only California

state law.



Even among the largest legal search providers who have the funds to create the largest collections of PACER data, there are large gaps in their databases. Legal briefs are currently one of the least available documents, compared to orders and opinions on specific motions. With a comprehensive data set of legal briefs, additional tools could be developed to help practitioners identify patterns in effective briefing. Possibilities include flagging unclear arguments and refining a brief based on the preferences of a judge, court, or similar legal matter—for example, avoiding reliance on a case a specific judge has cited negatively in the past. Innovators could also mine a database of legal briefs to identify the cases typically cited for a given legal issue and to identify relevant, persuasive cases that are frequently overlooked.

Innovators in the legal research space thus need access to a significant part of, or even the complete, PACER database to create a comprehensive, full-text

search database, predictive analytics tools, and intelligent legal search services. These new legal-technology tools provide legal analytics and research capabilities that go far beyond what any lawyer or law firm could achieve on their own. Patterns uncovered in federal litigation also could have benefits far beyond individual cases, including improving legal training, judicial decision-making, resource allocation, client decisions about when and whether to sue or settle, and the daily tasks of litigators. However, for such analyses to be accurate and thus useful, the total set of relevant cases must be known.

These are just a few examples of what innovators might be able to do with access to the full set of PACER data. Ultimately, because the data is not available we do not yet know the full range of innovative discoveries that could result if the documents were available.

### C. Excessive PACER Fees Hinder the Development of Tools That Would Improve the Practice of Law and Provide Equal Access to Justice

Excessive PACER fees exert a significant social cost, burdening attorneys, litigants, researchers, and the public. High PACER fees stifle competition in the legal research market, limit the development of tools that would improve the practice of law, and hinder the improvement of services to provide equal access to justice.

First, high fees burden anyone seeking to access publicly filed federal court documents. Individual institutions pay millions in PACER fees annually. The Department of Justice, for example, spent almost $4 million on PACER

fees in 2018. Free Law Project, *Facts About Pacer* (last visited Dec. 12, 2018), https://free.law/pacer-facts/#what-if-i%E2%80%99m-a-government-employee-say-at (citing DOJ PACER Expenditure & Allotment Rep. (run on Feb. 23, 2018), https://free.law/pdf/doj-pacer-totals.pdf).[8] Even for researchers or public citizens looking to review a single complex case, the price tag to review all relevant documents can be more than $20,000. Free Law Project, *Downloading Important Cases on PACER Costs More than a Brand New Car* (Nov. 17, 2017), https://free.law/2016/11/17/downloading-important-cases-on-pacer-costs-more-than-a-brand-new-car/. Moreover, the AO can decide to remove documents at any time—and has done so in the past. Free Law Project, *What is the "Pacer Problem"?* (Mar. 20, 2015), https://free.law/2015/03/20/what-is-the-pacer-problem/. Without independent monitoring of all publicly filed documents, no one can ensure full public scrutiny of all federal filings.

Second, excessive PACER fees disproportionately burden startup companies, which cannot afford to spend tens or even hundreds of millions of dollars to download sufficient documents to create their required database of federal court filings. That extremely high startup cost, exacerbated by excessive PACER fees, gives a significant advantage to the three large, established legal database companies: Westlaw, LexisNexis, and Bloomberg Law. Indeed, the cost of PACER downloads has affected the ability of some amici to remain as independent companies rather than to sell to large, entrenched players.

---

[8] Indeed, the Department of Justice would likely save taxpayer dollars if it could create an internal copy of their documents filed on PACER rather than pay the fees required by the AO.

Similarly, once a company has cornered an area of law, other companies are less likely to compete in that area due to high costs and competition risks, leading to niche monopolies and consolidation, which discourages continued innovation of legal technologies. Exorbitant PACER fees thus distort competition in the legal technology space, favoring incumbents over new companies that could create more innovative and accessible services.

Third, high PACER fees mean most legal tools available skew towards commercial and intellectual property law—they are made for those clients that can afford to pay the high fees. But if federal court documents were not prohibitively expensive available, small innovators could build research tools for areas of law, like employment or housing law, traditionally dominated by solo practitioners, non-profits, and pro-se litigants. Amici Justia and UniCourt, for example, have begun providing some free cases and court documents to anyone searching for filings online. This improves the availability of legal information—on employment discrimination, personal injury, divorce, and immigration issues—for all citizens.

Fourth, excessive PACER fees also unreasonably raise the price of time-sensitive case monitoring. Amici Casetext and UniCourt, for example, have automatic docket searching tools that scan PACER dockets to see if there are new filings in cases monitored by a client. Near real-time updates about filings can be crucial: Clients monitor cases similar to their ongoing matters and high impact cases like those at the Supreme Court or Circuit Court of Appeals level. Many seek to incorporate new law into their briefs expeditiously. But only big law firms can afford to pay for the high PACER fees required to regularly monitor dockets. If

those fees were lowered, case monitoring tools like Casetext and UniCourt would be more available for nonprofits, solo-practitioners, and journalists.

Lastly, widespread and affordable access to examples of successful legal briefs would raise the quality of legal arguments. Supreme Court briefs and opinions are readily available for free online, which has allowed researchers to uncover patterns to improve appellate litigation. To take one simple example, researchers at Empirical SCOTUS found that the most successful Supreme Court litigants use key terms in their briefs such as "vehicle" (to describe how a case serves as a good "vehicle" for a kind of legal issue). Adam Feldman, *Follow the Experts: Framing Petitions for Cert*, Empirical SCOTUS (Nov. 19, 2018), https://empiricalscotus.com/2018/11/19/follow-the-experts/. Making this information available can help improve legal briefing and can help level the quality of advocacy clients receive. Lower federal court briefs are not available online for free like Supreme Court briefs, but they similarly would provide advocates with useful insights, particularly of how advocates used case law. For example, Amicus Judicata provides some assistance to attorneys by uncovering patterns of persuasive drafting and legal research in winning briefs. Judicata's software reads and analyzes a user's legal brief, evaluating the strengths and weaknesses of argumentation. The larger the data set available for Judicata to analyze, the better the advice it can provide to lawyers.

Readily available access to public judicial records is essential for equal access to justice and maintaining the equity of all citizens under the law. But PACER's fees quickly become prohibitive for both the public and innovators who

wish to make the judiciary more accessible. Until the AO fulfills its congressional mandate to make court records "freely available to the greatest extent possible," S. Rep. 107-174, at 23 (2002), PACER fees will continue to limit access to only those who can afford to pay.

## CONCLUSION

Current PACER fees are excessive. The fees violate the clear statutory language of the E-Government Act and Congress's intent. They also hamper the development of a more robust and competitive market for better legal search and analytics tools, preventing the legal research field from realizing the full potential of rapidly evolving technological advancements. The excessive fees exacerbate inequalities in the legal system and artificially reduce the quality of legal services to the detriment of lawyers, researchers, the judiciary, and the public. The Court should hold that the AO's fees are excessive and that those fees illegally limit access to public documents.

Respectfully Submitted,

*/s/ Phillip R. Malone*

Phillip R. Malone
Juelsgaard Intellectual Property and
   Innovation Clinic
Mills Legal Clinic at Stanford Law
   School
559 Nathan Abbott Way
Stanford, CA 94305
(650) 725-6369
pmalone@law.stanford.edu

January 23, 2019

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on January 23, 2019 by Electronic Means (by CM/ECF).

*/s/ Phillip R. Malone*
_____
Phillip R. Malone
Juelsgaard Intellectual Property and
   Innovation Clinic
Mills Legal Clinic at Stanford Law
   School
559 Nathan Abbott Way
Stanford, CA 94305
(650) 725-6369
pmalone@law.stanford.edu

*Attorney for Amici Curiae*

# CERTIFICATE OF COMPLIANCE

This Brief complies with the type-volume limitation of Federal Circuit Rule 28.1(b) and Federal Rule of Appellate Procedure 29(a)(5). The brief contains 5,102 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and the type styles requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using the Overleaf online LaTex editor, in 14-point Roman font.

*/s/ Phillip R. Malone*

Phillip R. Malone
Juelsgaard Intellectual Property and
    Innovation Clinic
Mills Legal Clinic at Stanford Law
    School
559 Nathan Abbott Way
Stanford, CA 94305
(650) 725-6369
pmalone@law.stanford.edu

*Attorney for Amici Curiae*