No. 2019-1081

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

—————————————

NATIONAL VETERANS LEGAL SERVICES PROGRAM, NATIONAL
CONSUMER LAW CENTER, ALLIANCE FOR JUSTICE,

Plaintiffs - Appellants,

v.

UNITED STATES,

Defendant - Cross-Appellant.

—————————————

On Appeal from the United States District Court for the District of Columbia
in case no. 16-745, Judge Ellen S. Huvelle

—————————————

## BRIEF FOR CROSS-APPELLANT

—————————————

JOSEPH H. HUNT
  *Assistant Attorney General*

MARK B. STERN
ALISA B. KLEIN
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7235*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-1597*

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES

INTRODUCTION .............................................................................................. 1

STATEMENT OF JURISDICTION ................................................................ 4

STATEMENT OF THE ISSUES ..................................................................... 4

STATEMENT OF THE CASE ......................................................................... 5

I.      Statutory Background ........................................................................... 5

        A.      Statutes Authorizing the Judiciary to Set PACER Fees and
                Expend PACER Fee Revenue ................................................... 5

        B.      Congressional Oversight of PACER Fee Schedules
                and the Judiciary's Expenditures of PACER Fee Revenue ....... 7

II.     PACER Fee Revenue, Fee Waivers, and Expenditures ...................... 8

III.    District Court Proceedings ................................................................. 12

        A.      The Class Action Complaint ................................................... 12

        B.      The Orders Denying the Government's Motion to Dismiss
                and Certifying a Class ............................................................. 13

        C.      The Summary Judgment Order ............................................... 14

SUMMARY OF ARGUMENT ....................................................................... 17

STANDARD OF REVIEW .............................................................................. 19

ARGUMENT ...................................................................................................... 19

I.    The Summary Judgment Order Should Be Vacated For
      Lack of Little Tucker Act Jurisdiction .................................................... 19

      A.    To Establish Jurisdiction, Plaintiffs Were Required to
            Identify a Statute that Expressly or by Necessary Implication
            Gives PACER Users a Damages Remedy .................................... 19

      B.    No Statute Expressly or by Necessary Implication Gives PACER
            Users a Damages Remedy for Allegedly Excessive Fees ......................... 22

II.   The Judiciary's Expenditures Of PACER Fee Revenue Were
      Permissible. ............................................................................................. 26

      A.    The Expenditures Were Authorized by the Governing
            Statutes and Approved in Annual Appropriations Acts ......................... 26

      B.    Plaintiffs' Remaining Arguments Are Meritless ........................................ 31

CONCLUSION ................................................................................................ 34

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

STATUTORY ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** <u>Page(s)</u>

*A.H. Bull S.S. Co. v. United States,*
  108 F. Supp. 95 (Ct. Cl. 1952) ........................................................................ 23

*Belknap v. United States,*
  150 U.S. 588 (1893) .............................................................................. 30, 31

*Bobula v. U.S. Dep't of Justice,*
  970 F.2d 854 (Fed. Cir. 1992) ...................................................................... 20

*Cyprus Amax Coal Co. v. United States,*
  205 F.3d 1369 (Fed. Cir. 2000) .......................................................... 2, 14, 20

*Doe v. United States,*
  372 F.3d 1308 (Fed. Cir. 2004) ..................................................................... 20

*Knowles Elecs. LLC v. Iancu,*
  886 F.3d 1369 (Fed. Cir. 2018) ..................................................................... 32

*Norman v. United States,*
  429 F.3d 1081 (Fed. Cir. 2005) ......................................... 1, 2, 14, 17, 19, 20, 21

*Skinner v. Mid-America Pipeline Co.,*
  490 U.S. 212 (1989) ...................................................................................... 32

*United States v. Bormes,*
  568 U.S. 6 (2012) ......................................................................................... 19

*United States v. Testan,*
  424 U.S. 392 (1976) ...................................................................................... 19

*Washington Legal Found. v. U.S. Sentencing Comm'n,*
  17 F.3d 1446 (D.C. Cir. 1994) ....................................................................... 22

**Statutes:**

E-Government Act of 2002,
  Pub. L. No. 107-347, 116 Stat. 2899 (2002) .................................................. 7

Judiciary Appropriations Act, 1991,
  Pub. L. No. 101-515, tit. IV, 104 Stat. 2129 (1990) .................................... 5, 6

Judiciary Appropriations Act, 1992,
  Pub. L. No. 102-140, tit. III, 105 Stat. 782 (1991) ........................................ 6

Judiciary Appropriations Act, 2009,
  Pub. L. No. 111-8, div. D, tit. III, 123 Stat. 524 .......................................... 8

Little Tucker Act,
  28 U.S.C. 1346(a)(2) ..............................................................................4, 12, 19

Pub. L. No. 104-106, div. E, 110 Stat. 679 (1996) ........................................ 6, 7

5 U.S.C. § 551(1)(B) .................................................................................. 22

28 U.S.C. § 612(a) ...............................................................................7, 15, 24

28 U.S.C. § 612(c)(1)(A) ........................................................................ 7, 15

28 U.S.C. § 612(b)(1) .................................................................................... 8

28 U.S.C. § 1292(b) ...................................................................................... 4

28 U.S.C. § 1913 note.................................................................................... 6

## STATEMENT OF RELATED CASES

No other appeal in or from the present civil actions has previously been before this Court or any other appellate court.

# INTRODUCTION

This Little Tucker Act suit is a nationwide class action for damages brought on behalf of corporations, individuals, and organizations that retrieved federal court records through the Public Access to Court Electronic Records ("PACER") system between 2010 and 2016.  Plaintiffs allege that, for decades, the Judiciary has expended PACER fee revenue for purposes not intended by Congress.  They further allege that, as a result, the fees that users paid to retrieve records through PACER were too high.  Relying on an "illegal exaction" theory, plaintiffs contend that class members are entitled to a refund of allegedly excessive fees.  Appx87 ¶¶ 33-34.

The district court denied the government's motion to dismiss the case for lack of Little Tucker Act jurisdiction.  On cross-motions for summary judgment, the court declared that most, but not all, of the Judiciary's expenditures of fee revenue were permissible.  On the government's motion, the court certified the summary judgment order for interlocutory appeal, recognizing that the jurisdictional issue may be raised as well.  Appx48 n.1.

1.  As a threshold matter, the summary judgment order should be vacated for lack of Little Tucker Act jurisdiction.  To establish jurisdiction under an illegal exaction theory, it is not enough for a claimant to allege that money was "improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation."  *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005).  "To invoke Tucker Act jurisdiction over an illegal exaction claim, a claimant must

demonstrate that the statute or provision causing the exaction itself provides, either expressly or by 'necessary implication,' that 'the remedy for its violation entails a return of money unlawfully exacted.'" *Id.* (quoting *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed. Cir. 2000)).

Plaintiffs have never acknowledged the governing standard or attempted to make the required showing. Congress authorized the Judicial Conference to set and revise the schedule for PACER fees, and required the Judicial Conference to submit each schedule to Congress before it takes effect. Congress also required the Judicial Conference to submit its proposed expenditures of fee revenue to Congress in connection with its annual appropriations for the Judiciary. Congress was aware that no challenge to the fee schedule or expenditures could be asserted under the Administrative Procedure Act ("APA"), which does not apply to the Judiciary. The statutes governing fees and expenditures contain no suggestion—much less a "necessary implication"—that Congress intended that fees and expenditures be challenged in damages suits. Under the governing statutes, Congress itself, and not the courts, reviews the propriety of fees and the expenditures of fee revenue.

2. Assuming that the merits issues addressed in the summary judgment order are properly before this Court, plaintiffs are wrong to assert that the Judiciary has for decades engaged in impermissible expenditures of PACER fee revenue. The Judicial Conference correctly determined that it could use PACER fee revenue for programs such as the CM/ECF system, an electronic bankruptcy notification system, a web-

based juror services system, and courtroom technology expenses, all of which provide the public with access to information available through automatic data processing equipment. These expenditures fall easily within the terms of governing statutes, which authorize reimbursement of expenses incurred in providing these services and expenditures for the procurement of information technology services for the Judiciary. The Judicial Conference itemized its proposed uses of PACER fee revenue in its annual budget requests to Congress, which informed the annual appropriations legislation that Congress enacted for the Judiciary. Plaintiffs believe that Congress should have appropriated taxpayer dollars to fund programs like CM/ECF, but Congress has plenary control over appropriations and chose not to do so.

3.    The district court correctly rejected plaintiffs' contention that a 2002 amendment to the Judiciary Appropriations Act, 1991, barred the Judiciary from using PACER fee revenue for anything other than the marginal cost of operating PACER. Had Congress meant to enact a sweeping and significant restriction of this kind, it would have said so explicitly. Even the amicus brief of Senator Lieberman, who sponsored the 2002 amendment, does not endorse plaintiffs' view that the 2002 amendment was meant to halt the use of PACER fee revenue on CM/ECF. *See* Amicus Br. 11 n.4. And the subsequent Congresses that considered the Judiciary's annual budget requests never imposed any such restriction in the annual appropriations legislation that Congress enacted for the Judiciary.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a)(2).  Jurisdiction was contested.  The district court denied the government's motion to dismiss the complaint on December 5, 2016.  The district court issued a summary judgment order on March 31, 2018, and certified that order for interlocutory appeal on August 13, 2018.  Plaintiffs and the government filed timely petitions for leave to appeal on August 22 and August 23, 2018, respectively.  This Court granted the petitions on October 16, 2018.  This Court has appellate jurisdiction under 28 U.S.C. § 1292(b).

## STATEMENT OF THE ISSUES

1.  Whether the summary judgment order should be vacated for lack of Little Tucker Act jurisdiction because no statute expressly or by necessary implication gives PACER users a damages remedy for allegedly excessive PACER fees.

2.  Assuming the Court reaches the merits issue, whether the Judiciary's expenditures of PACER fee revenue were permissible.

# STATEMENT OF THE CASE

## I.    Statutory Background

### A.    Statutes Authorizing the Judiciary to Set PACER Fees and Expend PACER Fee Revenue

Plaintiffs challenge spending decisions made by the Judiciary through its policy-making body, the Judicial Conference.[1]  The Chief Justice of the United States is the presiding officer of the Judicial Conference.[2]  Its members include the chief judge of each court of appeals, a district court judge from each circuit, and the chief judge of the Court of International Trade.[3]  The Administrative Office is responsible for carrying out Judicial Conference policies.[4]

In 1988, the Judicial Conference authorized an experimental program of public access to court electronic records.  Appx2902-2903.  The following year, the Judicial Conference voted to recommend that Congress credit to the Judiciary's appropriations account any fees generated by providing public access to court electronic records.  Appx2905-2907.  Congress granted the Judiciary that spending authority when it enacted the Judiciary Appropriations Act, 1991.  *See* Judiciary

---

[1] *See* http://www.uscourts.gov/about-federal-courts/governance-judicial-conference.

[2] *See* http://www.uscourts.gov/about-federal-courts/governance-judicial-conference/about-judicial-conference.

[3] *See id.*

[4] *See* http://www.uscourts.gov/about-federal-courts/judicial-administration.

Appropriations Act, 1991, Pub. L. No. 101-515, tit. IV, § 404, 104 Stat. 2129, 2132-33 (1990) ("Section 404").[5]

Subsection (a) of Section 404 authorized the Judicial Conference to prescribe reasonable fees for "collection by the courts . . . for access to information available through automatic data processing equipment." That legislation made clear that these fees would not apply uniformly to all users. Instead, "[t]hese fees may distinguish between classes of persons, and shall provide for exempting persons or classes of persons from the fees, in order to avoid unreasonable burdens and to promote public access to such information."

Subsection (b) directed the Judicial Conference to provide the fee schedule to Congress at least 30 days before the schedule becomes effective. It also provided that all fees collected "shall be deposited as offsetting collections to the Judiciary Automation Fund pursuant to 28 U.S.C. 612(c)(1)(A) to reimburse expenses incurred in providing these services."

Congress subsequently replaced the Judiciary Automation Fund referenced in Section 404(b) with the Judiciary Information Technology Fund ("the Judiciary IT Fund" or "the Fund"). *See* Pub. L. No. 104-106, div. E, § 5602(b)(2), 110 Stat. 679,

---

[5] Section 404—which was codified as one of several notes to 28 U.S.C. § 1913—was later renumbered as Section 303. *See* Judiciary Appropriations Act, 1992, Pub. L. No. 102-140, tit. III, § 303, 105 Stat. 782, 810 (1991). For simplicity, we refer to the provision as Section 404. The text of Section 404, as amended, is reproduced in the addendum to this brief.

699-700 (1996). The statute that governs the Judiciary IT Fund requires that all fees collected under Section 404 be deposited in the Fund, *see* 28 U.S.C. § 612(c)(1)(A), and makes moneys in the Fund available to the Director of the Administrative Office for "the procurement . . . of information technology resources" for the federal court system, *id.* § 612(a). The statute further specifies that the deposited funds need not be expended within the fiscal year. *Id.*

In 2002, as part of the E-Government Act, Congress amended the first sentence of Section 404(a). The amendment replaced the word "shall" with "may, only to the extent necessary." Pub. L. No. 107-347, § 205(e), 116 Stat. 2899, 2915 (2002). As amended, the first sentence of Section 404(a) reads: "The Judicial Conference may, only to the extent necessary, prescribe reasonable fees . . . for collection by the courts . . . for access to information available through automatic data processing equipment." The amendment did not change the language of the statute that governs expenditures from the Judiciary IT Fund.

### B. Congressional Oversight of PACER Fee Schedules and the Judiciary's Expenditures of PACER Fee Revenue

Through an array of statutes, Congress has provided for regular congressional oversight of PACER fee schedules and the Judiciary's expenditures of PACER fee revenue. Section 404, which authorizes the fees, directs the Judicial Conference to transmit the schedule of PACER fees to Congress at least 30 days before the schedule becomes effective. The statute that governs the Judiciary IT Fund requires the

Director of the Administrative Office to report annually to Congress on the plan for meeting the Judiciary's IT needs, including an estimate of PACER fees to be collected. *See* 28 U.S.C. § 612(b)(1). Annual appropriations acts for the Judiciary require the Judiciary to submit to the House and Senate Appropriations Committees a detailed spending plan for the Judiciary IT Fund. *See, e.g.*, Judiciary Appropriations Act, 2009, Pub. L. No. 111-8, div. D, tit. III, § 304, 123 Stat. 524, 648. And in the annual budget requests that the Judiciary submits to Congress, the Judiciary sets out (among many other spending requests) its proposed expenditures of PACER fee revenue. *See, e.g.*, *The Judiciary: Fiscal Year 2020 Congressional Budget Justification*, Appendix 2.4 (table).[6]

## II.    PACER Fee Revenue, Fee Waivers, and Expenditures

The Judiciary's July 2018 report to Congress, relied on by plaintiffs (Pl. Br. 21), described trends in PACER revenue since the passage of the E-Government Act of 2002; sources of PACER revenue broken out by types of users; and how PACER revenue is spent. *See* FY 2018 Judiciary Report Requirement on PACER ("July 2018 Report").[7]

---

[6] In the Judiciary's budget requests and other reports to Congress, the programs funded by PACER fee revenue are collectively described as the Electronic Public Access ("EPA") program. The full text of the *FY 2020 Congressional Budget Justification* is available at https://www.uscourts.gov/about-federal-courts/governance-judicial-conference/congressional-budget-request, and the chapter on the EPA program is available through that link.

[7] https://perma.cc/CP8S-XRVQ

The report explained that PACER fee revenue has increased significantly since the passage of the E-Government Act, from about $28 million in fiscal year 2003 to about $146 million in fiscal year 2017. *See* July 2018 Report 1. This increase in revenue was due to the increase in the number of PACER users—more than 2.5 million registered users in 2018—in combination with increases in the per-page charge, which was set at $.07 per page in 1998, at $.08 per page in 2011, and at $.10 per page in 2012. *See id.* at 1, 3.

The report emphasized that the lion's share of PACER fee revenue comes from a handful of users: "two percent of accounts generat[ed] approximately 87 percent of revenue collected in FY 2017." July 2018 Report 2-3. The users comprising this two percent segment are major commercial enterprises and large law firms. *Id.* at 3. Such users collect massive amounts of data—often for aggregation and resale. These users thus reap profits from their acquisition of PACER data. *Id.*; *see also* Amicus Br. of Retired Federal Judges 21 (similarly noting that "[t]he vast majority of PACER revenue (approximately eighty five percent) is attributable to less than three percent of 'power-users,' which are, for the most part, financial institutions or other major commercial enterprises that collect massive amounts of data for aggregation and resale") (citation omitted). Amici identify Westlaw, LexisNexis, and Bloomberg Law as the three largest legal database companies. *See* Amicus Br. of Next-Generation Legal Research Platforms and Databases 18.

In contrast to the "power users" that account for the lion's share of PACER fee revenue, most users obtain access to PACER for free. *See* July 2018 Report 3. In a given year, approximately 350,000 of the 500,000 users who access PACER—or 70 percent—do so for free due to a fee waiver or exemption. *Id.* These fee waivers and exemptions implement Section 404(a), which authorized the Judicial Conference to distinguish among classes of persons in setting PACER fees and to exempt persons or classes of persons from fees. The Judicial Conference has expanded the fee waivers over time. For example, in 2001 the Judicial Conference provided that no fee would be owed unless an account holder accrued charges totaling more than $10 in a calendar year. *See* July 2018 Report 1. In 2010, the Judicial Conference effectively quadrupled that waiver by providing that no fee would be owed unless the account holder accrued charges of more than $10 in a quarterly billing cycle. *See id.* In 2012, the Judicial Conference expanded that waiver yet again by raising the threshold to $15 in a quarterly billing cycle. *See id.* at 2.

In addition to these fee waivers, the parties in a case (including pro se litigants) and attorneys of record receive one free electronic copy of all documents filed electronically. *See* Electronic Public Access Schedule (2013).[8] No fee is charged for access to documents that the authoring judge designates as a judicial opinion. *Id.*

---

[8] https://www.pacer.gov/documents/epa_feesched.pdf

And no fee is charged for viewing case information or documents at courthouse public access terminals. *Id.*

Courts also have discretion to grant a fee exemption for various categories of persons if an exemption is necessary in order to avoid unreasonable burdens and to promote public access to information. *See* July 2018 Report 3. These categories include persons who are indigent, bankruptcy case trustees, pro bono attorneys, pro bono alternative dispute resolution neutrals, Section 501(c)(3) not-for-profit organizations, and individual researchers associated with educational institutions. *Id.* In fiscal year 2017 alone, nearly $24 million dollars were not collected due to exemptions. *Id.*

The July 2018 Report identified the amounts of PACER fee revenue spent on particular programs during fiscal years 2013-2017. *See id.* at 3 (table providing dollar amounts by category of expenditure). The report showed that PACER fee revenue is spent on technology programs that include CM/ECF, courtroom technology, electronic bankruptcy noticing, web-based juror services, and a Violent Crime Control Act notification for law enforcement. *See id.* The Judiciary likewise identifies its proposed expenditures of PACER fee revenue in the annual budget justifications that it submits to Congress, in anticipation of appropriations legislation. *See, e.g.,* Appx2017, Appx2348-2351 (setting out proposed expenditures of PACER fee revenue, by category, for fiscal year 2011); Appx1694, Appx2011-2014 (same for fiscal year 2012); Appx1382, Appx1686-1690 (same for fiscal year 2013).

III.    **District Court Proceedings**

A.    **The Class Action Complaint**

The plaintiff class includes corporations, individuals, and entities that paid to obtain records through PACER.  Plaintiffs invoked the district court's jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), which gives the district courts jurisdiction, concurrent with the Court of Federal Claims, over a civil action against the United States not exceeding $10,000 in amount that is founded on a federal statute.

The single-count complaint relied on an "illegal exaction" theory, alleging that PACER users are entitled to a refund of fees that the Judiciary is alleged to have illegally exacted from them.  Appx87 ¶¶ 33-34.  To bring the "power users" of PACER under the $10,000 limit and within the ambit of the class, plaintiffs alleged that each download for which a charge is paid gives rise to a separate illegal exaction claim.  Appx87 ¶ 34; *see also* Appx98 (motion for class certification) (urging that "a single plaintiff seeking millions of dollars may bring suit in federal district court under the Little Tucker Act if the total amount sought represents the accumulation of many separate transactions").

The complaint alleged that since the 1990s, the Judiciary has been using PACER fee revenue for purposes not intended by Congress, and that as a result the cost of each download was higher than it should have been.  Plaintiffs alleged that when Congress first authorized the Judiciary to charge PACER fees in the Judiciary

Appropriations Act, 1991, it intended to limit fee revenue to the cost of providing

access to the records.  Appx78 ¶ 8.  Plaintiffs alleged that the Judiciary disregarded

that limitation when it began using PACER fee revenue to support the CM/ECF

program in the late 1990s, and they urged that, in 2002, Congress amended the

Judiciary Appropriations Act, 1991, in order to halt the spending on CM/ECF and

confine fee revenue to the marginal cost of disseminating information through

PACER.  Appx78 ¶ 8, Appx79 ¶ 12.  Plaintiffs alleged that the Judiciary has been

exceeding its spending authority ever since that time, by continuing to use PACER fee

revenue for CM/ECF and certain other technology programs.  *See, e.g.*, Appx80 ¶ 13,

Appx83 ¶ 21.

## B.    The Orders Denying the Government's Motion to Dismiss and Certifying a Class

At an early stage of the litigation, the government moved to dismiss the

complaint, arguing (as relevant here) that there is no Little Tucker Act jurisdiction

because no statute expressly or by necessary implication gives PACER users a

monetary remedy for allegedly excessive fees.  Appx292-296; Appx399-400.  The

government explained that the only remedy available to PACER users is an

administrative remedy for billing errors submitted to the PACER Service Center,

which does not allow the monetary relief plaintiffs seek.  *See* Appx293-296.

The district court denied the motion to dismiss.  Appx428.  The court

recognized that to proceed on an illegal exaction theory, the substantive statute must

13

provide "either expressly or by 'necessary implication,' that 'the remedy for its violation entails a return of money unlawfully exacted.'"  Appx433 (quoting *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (quoting *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed. Cir. 2000))).  But although the opinion recited the governing standard, it did not purport to identify a statute that expressly or by necessary implication gives PACER users a monetary remedy for allegedly excessive fees.

Subsequently, over the government's objection, the district court certified a Rule 23(b)(3) opt-out class of all individuals and entities that paid fees for the use of PACER between April 21, 2010 and April 21, 2016, which was the period covered by the general statute of limitations for claims against the United States.  Appx2354.  The class excludes class counsel and agencies of the federal government.  *Id.*

## C.    The Summary Judgment Order

After a period of discovery, the district court addressed the permissibility of various expenditures of PACER fee revenue that the Judiciary had identified in its annual budget requests to Congress.  On cross-motions for summary judgment, the court denied plaintiffs' motion in its entirety, and granted the government's motion in part and denied it in part.  Appx1.

The district court rejected plaintiffs' contention that the 2002 amendment to Section 404 of the Judiciary Appropriations Act, 1991, barred the Judiciary from using PACER fee revenue for anything other than the marginal cost of operating PACER.

14

*See* Appx25.  The court explained that at the time the 2002 amendment was enacted,
"PACER fees were already being used to pay for non-PACER costs, such as
[electronic bankruptcy noticing] and CM/ECF, and there is nothing in the statute's
text or legislative history to suggest that Congress intended to disallow the use of
PACER fees for those services." Appx28 (citation omitted).

The district court recognized that the amended text of Section 404 can
reasonably be interpreted to allow PACER fee revenue to be used for "any service
that provides 'access to information available through automatic data processing
equipment.'" Appx26.  The court did not dispute that the challenged expenditures fit
that description.  Nor did the court dispute that the statute that governs the Judiciary
IT Fund requires that all fees collected under Section 404 be deposited in the Fund,
*see* 28 U.S.C. § 612(c)(1)(A), and makes moneys in the Fund broadly available to the
Director of the Administrative Office for the procurement of information technology
resources for the federal court system, *id.* § 612(a).  *See* Appx30.  Nonetheless, the
court imposed an additional limitation on the permissible uses of PACER fee
revenue.  The court declared that such revenue may be used only to "provid[e] the
public with access to electronic information maintained and stored by the federal
courts on its CM/ECF docketing system." Appx39.  The court indicated that it
derived this limitation from an amalgam of sources, including "Congress'
endorsement of the expenditures being made in 2002, in conjunction with the

statutory language"; "the evolution of the E-Government Act"; and "the judiciary's practices as of the date of the Act's passage." *Id.*

On that basis, the district court declared that the Judiciary had exceeded its spending authority by using PACER fee revenue for four categories of expenditures: (1) a study—which the Judicial Conference undertook at the direction of the Senate Appropriations Committee to explore the feasibility of sharing CM/ECF technology with state governments, *see* Appx3150, Appx3153-3154—that allowed the State of Mississippi to provide the public with electronic access to its documents, *see* Appx40-41; (2) a Violent Crime Control Act system that notifies law enforcement of changes to the case history of offenders under supervision, *see* Appx41; (3) a web-based system that provides prospective jurors with electronic copies of court documents regarding jury service, *see* Appx41; and (4) courtroom technology expenditures that improved the Judiciary's ability to share case evidence electronically, *see* Appx42.

The district court did not attempt to translate this summary judgment ruling into damages awards for particular PACER users. Instead, with the support of both parties, the court certified the summary judgment order for interlocutory appeal, emphasizing that "a potentially lengthy and complicated damages phase" will be avoided if this Court rules in the government's favor. Appx52. Although the district court declined to certify its earlier order denying the government's motion to dismiss, the court recognized that the government is free to raise the jurisdictional issue at any time. Appx48 n.1.

16

## SUMMARY OF ARGUMENT

Plaintiffs contend that each PACER download in the six-year period covered by this suit gave rise to an illegal exaction claim. They argue that the decision of the Judicial Conference to use PACER fee revenue for certain information technology programs fell outside the scope of the authorizing statutes, and they posit that if these expenditures had not been made, the Judicial Conference would have reduced PACER fees in the aggregate by an equivalent amount.

1. Plaintiffs have not established a basis for jurisdiction under the Little Tucker Act. It is axiomatic that "[t]o invoke Tucker Act jurisdiction over an illegal exaction claim, a claimant must demonstrate that the statute or provision causing the exaction itself provides, either expressly or by 'necessary implication,' that 'the remedy for its violation entails a return of money unlawfully exacted.'" *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005). The statutes that govern PACER fees and the expenditure of fee revenue provide no basis for any inference—much less a necessary inference—that Congress intended to permit claims for illegal exaction. Congress vested authority to collect and expend fees in the Judicial Conference, aware that its actions are not subject to judicial review under the Administrative Procedure Act. There is no basis whatsoever to infer that Congress nevertheless meant to permit retrospective judicial review in the form of damages actions. Congress had no reason to permit such suits, because Congress itself considers the Judiciary's expenditures of fee revenue annually in reviewing its appropriations requests.

17

2.  If the Court reaches the merits of the summary judgment ruling, the Court should uphold the Judiciary's expenditures.  Section 404(a) authorizes the Judiciary to prescribe reasonable fees, to the extent necessary, "for access to information available through automatic data processing equipment."  The district court correctly recognized that this language is reasonably interpreted to allow fees to be used to support any service that provides access to information available through automatic data processing equipment, Appx26, as is the case for all of the expenditures at issue here.  That conclusion is reinforced by the statute that governs the Judiciary IT Fund, which requires that all fees collected under Section 404(a) be deposited in the Fund and which makes moneys in the Fund available for the procurement of information technology resources for the Judiciary.  If there were any doubt as to the scope of the Judiciary's expenditure authority, it is removed by the decades in which Congress has reviewed the Judiciary's annual appropriations requests and enacted appropriations legislation for the Judiciary.

3.  The district court correctly rejected plaintiffs' contention that a 2002 amendment to Section 404 impliedly precluded the Judiciary's spending on CM/ECF. If Congress had meant to impose such a significant restriction it would have said so explicitly.  Even the amicus brief of Senator Lieberman, the E-Government Act's sponsor, does not embrace plaintiffs' contention.

# STANDARD OF REVIEW

This Court reviews de novo the district court's conclusions of law, including questions involving jurisdiction. *See Norman v. United States*, 429 F.3d 1081, 1087 (Fed. Cir. 2005).

# ARGUMENT

## I.    The Summary Judgment Order Should Be Vacated For Lack of Little Tucker Act Jurisdiction.

### A.    To Establish Jurisdiction, Plaintiffs Were Required to Identify a Statute that Expressly or by Necessary Implication Gives PACER Users a Damages Remedy.

Plaintiffs invoked the district court's jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), which gives the district courts jurisdiction, concurrent with the Court of Federal Claims, over a civil action against the United States not exceeding $10,000 in amount that is founded on a federal statute. Appx87 ¶ 33 (complaint). The Little Tucker Act and its companion statute, the Tucker Act, "do not themselves creat[e] substantive rights, but are simply jurisdictional provisions that operate to waive sovereign immunity for claims premised on other sources of law." *United States v. Bormes*, 568 U.S. 6, 10 (2012) (quotation marks omitted). Therefore, the claimant must identify another source of law that "confer[s] a substantive right to recover money damages from the United States." *United States v. Testan*, 424 U.S. 392, 398 (1976). That other source of law, "whether it be the Constitution, a statute, or a regulation," is what "create[s] a cause of action for money damages." *Id.* at 401-02.

Without a cause of action for damages, there is no Little Tucker Act jurisdiction. *See Doe v. United States*, 372 F.3d 1308, 1313 (Fed. Cir. 2004) (explaining that "a district court, when exercising jurisdiction under the Little Tucker Act, in effect sits as the Court of Federal Claims, which does not have general equitable powers").

It is the claimant's burden to establish Little Tucker Act jurisdiction. *See Bobula v. U.S. Dep't of Justice*, 970 F.2d 854, 858 (Fed. Cir. 1992). To meet this burden, plaintiffs here relied on an "illegal exaction" theory. *See* Appx77 ¶ 5, Appx87 ¶¶ 33-34. To demonstrate an illegal exaction, a plaintiff must show that money has been "improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005). Demonstrating that money was improperly paid, exacted or taken is necessary but not sufficient to establish an illegal exaction. "To invoke Tucker Act jurisdiction over an illegal exaction claim, a claimant must demonstrate that the statute or provision causing the exaction itself provides, either expressly or by 'necessary implication,' that 'the remedy for its violation entails a return of money unlawfully exacted.'" *Id.* (quoting *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed. Cir. 2000)). In *Cyprus Amax*, for example, this Court concluded that "the Tucker Act provided jurisdiction over an illegal exaction claim based upon the Export Clause of the Constitution because the language of that clause 'leads to the ineluctable conclusion that the clause provides a cause of action with a monetary remedy.'" *Norman*, 429 F.3d at 1095 (quoting *Cyprus Amax*, 205 F.3d at 1373).

20

Although plaintiffs bore the burden of establishing jurisdiction, they have never attempted to make this showing. Instead, they observe that an illegal exaction claim may proceed "regardless of whether the statute itself creates an *express* cause of action" for damages. Pl. Br. 18 (emphasis added). Plaintiffs never acknowledge, however, that this Court's precedent requires them to show that the substantive statute provides a damages cause of action by "necessary implication." *Norman*, 429 F.3d at 1095. Plaintiffs likewise omitted that jurisdictional requirement from their district court filings. *See, e.g.*, Appx87 ¶ 33 (complaint). Plaintiffs may prefer to disregard the fundamental elements of an illegal exaction claim, but they cannot proceed without making the showing required by this Court's precedents.[9]

---

[9] Plaintiffs' brief incorrectly suggests that the government did not rely on *Norman*'s jurisdictional standard below. Pl. Br. 19. The district court would have been required to assure itself of Little Tucker Act jurisdiction even if the issue had not been raised. But in fact, the government's motion to dismiss argued that "Plaintiffs Have Not Alleged A Statutory Remedy That Supports An Illegal Exaction Claim," Appx292, and quoted the same language from *Norman* that we rely upon here, Appx293. The government's motion explained that the only remedy for PACER users is an administrative remedy for billing errors that did not provide a basis for their illegal exaction claims. Appx293-296. Plaintiffs agreed in their opposition brief that the administrative remedy for billing errors was inapplicable, Appx326-327, but they did not attempt to identify a statute that authorized the damages they seek, Appx326-328. Thus, in reply, the government urged that plaintiffs had waived that argument. Appx399-400; Appx400. The district court's opinion did not address the waiver issue.

## B.      No Statute Expressly or by Necessary Implication Gives PACER Users a Damages Remedy for Allegedly Excessive Fees.

No statute expressly or by necessary implication gives PACER users a damages remedy for allegedly excessive fees.  Congress vested in the Judicial Conference responsibility for setting fees and expending fee revenue.  In doing so, Congress would have been aware that these determinations could not be challenged in district court under the APA, which does not apply to the Judiciary.  *Washington Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994); *see* 5 U.S.C. § 551(1)(B).

Nothing in the statutory scheme suggests that Congress nevertheless intended to make the decisions of the Judicial Conference subject to judicial review by means of an implied damages remedy.  Instead, Congress required that the Judiciary apprise it of PACER fees before any fee schedule takes effect, and apprise it of proposed expenditures of fee revenue in its annual reports and budget requests.  These statutes thus allow Congress itself to exercise such oversight as it deems necessary, in particular via the annual appropriations process.  In this way Congress also avoided the appearance of a conflict of interest that would be created by requiring individual judges to second-guess the spending decisions made by the Judicial Conference on behalf of the Judiciary as a whole.[10]

---

[10] The trial judge recognized the apparent conflict created by a suit of this kind but concluded it should proceed under the "rule of necessity" because every judge would face the same conflict.  Appx2377.  Congress, however, did not put any judge in the position of adjudicating claims of this kind.

Because Congress reserved to itself the responsibility to oversee PACER fee schedules and the expenditure of fee revenue, Congress did not provide any mechanism by which a court could identify the "correct" fee for a particular download by a particular user. The premise of this suit is that each download from PACER gives rise to a separate illegal exaction claim. Appx87 ¶ 34; Appx99. For such a claim to be a cognizable, the statute would have to establish a specific fee for each download. *See, e.g.*, *A.H. Bull S.S. Co. v. United States*, 108 F. Supp. 95, 97 (Ct. Cl. 1952) (allowing an illegal exaction claim to proceed because the substantive statute "was intended to fix, by a self-operating statutory formula, the selling price of the Government's surplus ships," such that "the determination of the price was a mere mathematical calculation").

Instead, Congress explicitly contemplated that fees for downloads would vary from user to user, so there is no "correct" fee that could form the basis of an illegal exaction claim. Section 404(a) made clear that the fees would not apply uniformly to all users, expressly providing that "[t]hese fees may distinguish between classes of persons, and shall provide for exempting persons or classes of persons from the fees, in order to avoid unreasonable burdens and to promote public access to such information." And as described above, the Judiciary Conference exercises that authority through an array of fee waivers and exemptions that have evolved over time. *See supra*, pp. 10-11.

The series of speculations underlying plaintiffs' claims does nothing to enhance the plausibility of implying a cause of action for damages. First, there is no apparent basis for plaintiffs' assumption that if the Judiciary had not made the challenged expenditures, it would have reduced PACER fees by the amount saved. The Judiciary could have decided to leave the fee schedule in place and use the same fee revenue to accelerate its enhancements of PACER and the CM/ECF system. *See, e.g.*, Appx2349-2350 (budget request for fiscal year 2011, describing the Judiciary's plans for enhancing PACER and developing the Next Generation of CM/ECF over a five-year period); July 2018 Report 4 (describing the Judiciary's recent and ongoing initiatives to improve PACER technology). Indeed, to facilitate such long-term projects, Congress provided that fee revenue need not be expended within a particular fiscal year, and thus allowed the Judiciary to carry forward surpluses of fee revenue. *See* 28 U.S.C. § 612(a) (making moneys deposited in the Judiciary IT Fund available "without fiscal year limitation"); *see, e.g.*, Appx3096 (carrying forward surpluses of fee revenue for fiscal years 2008 and 2009); Appx3098 (same for fiscal years 2011 and 2012).

Moreover, even assuming that the Judiciary had decided to collect a lower *aggregate* amount of fee revenue, it is entirely unclear how that decision would have affected any particular user. The Judicial Conference has broad discretion in allocating fees among different types of users, and it could have adopted many different means to achieve Section 404's goal of avoiding unreasonable burdens and promoting public access. The class members vary widely in their circumstances. At

one extreme is the handful of "power users" that account for 87 percent of PACER

fee revenue.  July 2018 Report 2-3.  These commercial institutions collect massive

amounts of data—often for aggregation and resale—which means they profit from

their acquisition of PACER data.  *Id.* at 3; *see* Amicus Br. of Next-Generation Legal

Research Platforms and Databases 18 (identifying Westlaw, LexisNexis, and

Bloomberg Law as the three largest legal database companies).  At the other extreme

are individuals or entities that may have only a small amount of PACER use during

the six-year period at issue in this case.  The class would include, for instance, an

individual who paid only a single $16 bill over the entire six-year period.  Even the

named plaintiff Alliance for Justice—which has annual revenues of more than four

million dollars—paid only $391.40 in fees over that six-year period.  Appx449

(declaration of the Alliance for Justice Legal Director).

If the Judicial Conference had decided to collect a lower total amount of fee

revenue, it might have directed those savings to infrequent users rather than to the

"power users" that profit handsomely in marketing their PACER downloads.  For

example, the Judicial Conference might have raised the threshold dollar charge that

must be incurred before a user is billed (which was set at $10 per quarter in 2010 and

raised to $15 per quarter in 2012).  It might have increased the number of free

downloads by, for instance, giving the parties in a case and attorneys of record

unlimited free copies (rather than one free copy) of all documents filed electronically.

It might have expanded the categories of persons and entities eligible to obtain

discretionary exemptions from the courts.  And it might have employed any of these approaches in combination.

In sum, Congress insulated the Judiciary from review under the APA, and Congress itself undertook the role of overseeing the collection and expenditure of PACER fees as part of the appropriations process.  In vesting authority in the Judicial Conference to establish a fee schedule, Congress also gave the Judicial Conference authority to establish varying rates for different users, thus ensuring that there would never be a "correct" fee for any particular download.  Nothing in this structure remotely suggests that Congress intended to create a cause of action for damages.  Accordingly, there is no basis to award damages to any user, and the summary judgment order should be vacated for lack of Little Tucker Act jurisdiction.

## II.    The Judiciary's Expenditures Of PACER Fee Revenue Were Permissible.

### A.    The Expenditures Were Authorized by the Governing Statutes and Approved in Annual Appropriations Acts.

If the Court reaches the merits of the summary judgment order, it should hold that the Judiciary's expenditures of PACER fee revenue were permissible.  The challenged expenditures were authorized by the governing statutes and approved in annual appropriations acts for the Judiciary.

Section 404(a) authorizes the Judiciary to prescribe reasonable fees, to the extent necessary, "for access to information available through automatic data processing equipment."  The district court correctly recognized that this language can

26

reasonably be interpreted to allow fees to be used to support "any service that provides 'access to information available through automatic data processing equipment.'" Appx26.  That conclusion is reinforced by the statute that governs the Judiciary IT Fund, which requires that all fees collected under Section 404(a) be deposited in the Fund and makes moneys in the Fund available for the procurement of information technology resources for the Judiciary.

There is no dispute that all of the expenditures at issue here were for services that provide "access to information available through automatic data processing equipment." Appx26.  For example, under the Violent Crime Control Act notification system, local law enforcement officers receive electronic notification of court documents that were previously sent to them through the mail, which notify them of changes to the case history of offenders under supervision.  *See* Appx20. Thus, that system provides local law enforcement officers with "access to information available through [automatic] data processing equipment." Appx26.  Likewise, the web-based juror services system provides prospective jurors with electronic copies of court documents regarding jury service.  *See* Appx20.  The State of Mississippi study—which the Judicial Conference undertook at the express direction of the Senate Appropriations Committee to explore the feasibility of sharing CM/ECF technology with state governments, *see* Appx3150, Appx3153-3154—allowed the State to provide the public with electronic access to its documents.  *See* Appx20.  And the courtroom technology expenditures improved "the Judiciary's ability to share case

27

evidence with the public in the courtroom during proceedings and to share case evidence electronically through electronic public access services when it is presented electronically and becomes and electronic court record." Appx15-16 (quotation marks and citation omitted).

If there were any doubt as to the propriety of the Judiciary's expenditures, it is removed by decades of annual appropriations legislation. Congress is not a passive observer to the expenditure of funds. It reviews the expenditures annually in considering the Judiciary's appropriations requests. Plaintiffs' submissions in the court below include annual budget requests that the Judiciary submitted to Congress, in which the Judicial Conference set out its proposed uses of PACER fee revenue by category and amount. *See, e.g.*, Appx2017, Appx2348-2351 (excerpt from the Judiciary's budget request for fiscal year 2011); Appx1694, Appx2011-2014 (excerpt from the Judiciary's budget request for fiscal year 2012); Appx1382, Appx1686-1690 (excerpt from the Judiciary's budget request for fiscal year 2013); Appx1069, Appx1371-1375 (excerpt from the Judiciary's budget request for fiscal year 2014); Appx455, Appx809-813 (excerpt from the Judiciary's budget request for fiscal year 2016).

Those budget requests specifically enumerated the expenditures of PACER fee revenue that are at issue in this case. For example, the Judiciary's budget request for fiscal year 2011 apprised Congress of the intended amounts of PACER fee revenue that the Judiciary proposed to spend on CM/ECF, courtroom technology, electronic

bankruptcy noticing, the State of Mississippi CM/ECF feasibility study, web-based juror services, and the Violent Crime Control Act notification for law enforcement. *See* Appx2531; *see also*, *e.g.*, Appx2014 (same for fiscal year 2012).

Congress, of course, was free to reject or amend the Judiciary's budget requests. It could have precluded spending for these items altogether. Or, if it believed that these items were not properly funded from PACER fee revenue, it could have chosen to appropriate taxpayer dollars for any or all of these programs. But Congress did not do so, and, in enacting the annual appropriations legislation, Congress thus approved the Judiciary's proposed uses of PACER fee revenue.

Plaintiffs believe that Congress instead should have used "direct appropriations" (*i.e.*, taxpayer dollars) to finance "worthwhile" programs like CM/ECF, courtroom technology, and web-based juror services, Pl. Br. 44-45, rather than finance them with revenue that is obtained in large part from the "power users" that profit by the resale of PACER data. But the decision how to finance government programs is a quintessential legislative judgment. To the extent that plaintiffs and amici believe that "[t]he best policy is to make PACER free," Amicus Br. of Retired Federal Judges 4, they should direct their policy arguments to Congress rather than the courts.

Senator Lieberman, who sponsored the E-Government Act of 2002, recognized as much in the 2010 letter on which plaintiffs heavily rely. *See, e.g.*, Pl. Br. 2, 14, 16, 44, 45 (quoting Appx2622). Senator Lieberman directed that letter to

the Chairman and Ranking Member of the Subcommittee on Financial Services and General Government, Senate Committee on Appropriations. Appx2620. The letter urged that "[t]he *Appropriations Committee* should review the Judiciary Information Technology Fund Report provided each year to ensure the funds generated from PACER are only going to pay for the direct costs of disseminating documents via PACER," and "not for additional items which I believe should be funded through direct appropriations." Appx2622 (emphasis added). Senator Lieberman disagreed with some of the purposes for which PACER fees have been expended. The relevant point, however, is that he correctly recognized that the question of how to finance these important programs is a policy decision for Congress to make in the context of annual appropriations legislation.

The district court's belief that "an appropriations Act passed by Congress cannot alter the meaning of [a] statute," Appx34 n.23, is incorrect. An appropriations act is legislation, duly passed by Congress and presented to the President, and it is well established that appropriations legislation can alter the meaning of a statute. *See, e.g.*, *Belknap v. United States*, 150 U.S. 588, 592-95 (1893) (holding that annual appropriations acts worked a "legislative readjustment of salaries" by appropriating less than the full salaries set by substantive legislation).[11] Here, however, there was no

---

[11] Indeed, Section 404 itself was enacted as part of appropriations legislation (the Judiciary Appropriations Act, 1991).

need for Congress to alter the meaning of prior legislation, because its annual appropriations acts for the Judiciary were consistent with that legislation.

### B.    Plaintiffs' Remaining Arguments Are Meritless

Plaintiffs' basic narrative is simple but wrong.  They contend that when Congress first authorized the Judiciary to charge PACER fees in the Judiciary Appropriations Act, 1991, Congress intended to limit fee revenue to the cost of providing access to the records.  Appx78 ¶ 8 (complaint).  They contend that the Judiciary disregarded that limitation when it began using PACER fee revenue to support the CM/ECF program in the late 1990s.  Appx78-79 ¶¶ 8-10.  And they contend that, in direct response to that spending, Senator Lieberman proposed the 2002 amendment to Section 404(a) in order to halt the Judiciary's use of PACER fee revenue for the CM/ECF system.  Appx78 ¶ 8; Appx79 ¶ 12.

The district court correctly rejected this account of the legislation, and even Senator Lieberman, the E-Government Act's sponsor, does not embrace plaintiffs' contention that he proposed the 2002 amendment to Section 404 with the intent to halt the Judiciary's spending on CM/ECF.  Senator Lieberman's amicus brief takes "no position" on whether "PACER and CM/ECF are so inextricably connected that PACER fees may permissibly be used to support the costs of CM/ECF and Electronic Bankruptcy Noticing."  Amicus Br. of Sen. Lieberman 11 n.4.  In other words, the drafter of the 2002 amendment had no specific intent to halt the Judiciary's spending on CM/ECF or the electronic bankruptcy noticing system.

31

There is no reason to conclude that Congress intended to starve these vital programs of funding. The 2002 amendment simply amended a phrase in Section 404(a), which had provided that "[t]he Judicial Conference shall prescribe reasonable fees," to read "[t]he Judicial Conference may, only to the extent necessary, prescribe reasonable fees[.]" That language did not disapprove any existing expenditures and established no specific constraint on expenditures. Congress does not "hide elephants in mouseholes." *Knowles Elecs. LLC v. Iancu*, 886 F.3d 1369, 1379 (Fed. Cir. 2018). There is "nothing in the statute's text or legislative history to suggest that Congress intended to disallow the use of PACER fees for those services," Appx28, or for future new services or enhancements. And, of course, Congress has reviewed the Judiciary's use of fees in considering its annual budget requests and has never restricted the challenged uses.

Plaintiffs' reliance on *Skinner v. Mid-America Pipeline Co.*, 490 U.S. 212, 224 (1989), is wholly misplaced. They cite that case for the proposition that "a user fee may not exceed the cost of providing services 'inuring directly to the benefit' of the person who pays the user fee, unless Congress has 'indicate[d] clearly its intention to delegate' its taxing power." Pl. Br. 3.

*Skinner* concerned charges assessed on pipeline facilities regulated under the Hazardous Liquid Pipeline Safety Act of 1979 and the Natural Gas Pipeline Safety Act of 1968. The Supreme Court upheld the charges. In contrast to the entities in *Skinner*, PACER users are not regulated entities made subject to the government's

coercive taxing power.  Moreover, the text of Section 404(a) refutes plaintiffs'
assertion that a PACER user cannot be charged more than the cost of services inuring
directly to that user's benefit.  As discussed above, Section 404(a) explicitly authorizes
the Judiciary to distinguish among users in setting fees in order to promote public
access to information.  Congress thus made clear that the fee charged to any particular
user may exceed the cost of providing PACER access for that user, and that the
Judiciary was also free to set reduced charges or no charges at all for other users.
Thus, even assuming that in the aggregate PACER fees did no more than cover the
cost of providing services, some users would pay more than the cost of providing
access.  Pursuant to clear statutory authority, the Judiciary has, through the fee waivers
and exemptions, consistently allowed hundreds of thousands of users to access
PACER for free, with "power users" and large law firms subsidizing the free access
enjoyed by most PACER users.[12]

---

[12] Although the propriety of the class certification order is not before the Court
at this juncture, we note that the government opposed certification of a nationwide
class because the interests of "power users" and other large commercial users diverge
from the interests of the small users whose PACER access they subsidize.  Appx310-
315.

# CONCLUSION

The summary judgment order should be vacated for lack of Little Tucker Act jurisdiction. Alternatively, if the Court reaches the merits of the issue decided in the summary judgment order, the Court should hold that the Judiciary's expenditures of PACER fee revenue were permissible.

Respectfully submitted,

JOSEPH H. HUNT
*Assistant Attorney General*

MARK B. STERN

*s/ Alisa B. Klein*

ALISA B. KLEIN
*Attorneys, Appellate Staff*
*Civil Division, Room 7235*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-1597*
*alisa.klein@usdoj.gov*

April 2019

**CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2019, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.


*s/ Alisa B. Klein*
Alisa B. Klein

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 28.1(e)(2)(B) because it contains 8004 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Alisa B. Klein*
Alisa B. Klein

**STATUTORY ADDENDUM**

# TABLE OF CONTENTS

Section 404 of the Judiciary Appropriations Act, 1991, as amended by Pub. L.
No. 107-347, § 205(e), 116 Stat. 2899, 2915 (2002), codified as a note to
28 U.S.C. § 1913 ................................................................................................ A1

28 U.S.C. § 612 .................................................................................................... A2

## Section 404 of the Judiciary Appropriations Act, 1991, as amended by Pub. L. No. 107-347, § 205(e), 116 Stat. 2899, 2915 (2002), codified as a note to 28 U.S.C. § 1913

(a) The Judicial Conference may, only to the extent necessary, prescribe reasonable fees, pursuant to sections 1913, 1914, 1926, and 1930 of title 28, United States Code, for collection by the courts under those sections for access to information available through automatic data processing equipment. These fees may distinguish between classes of persons, and shall provide for exempting persons or classes of persons from the fees, in order to avoid unreasonable burdens and to promote public access to such information. The Director [of the Administrative Office], under the direction of the Judicial Conference of the United States, shall prescribe a schedule of reasonable fees for electronic access to information which the Director is required to maintain and make available to the public.

(b) The Judicial Conference and the Director shall transmit each schedule of fees prescribed under paragraph (a) to the Congress at least 30 days before the schedule becomes effective. All fees hereafter collected by the Judiciary under paragraph (a) as a charge for services rendered shall be deposited as offsetting collections to the Judiciary Automation Fund pursuant to 28 U.S.C. 612(c)(1)(A) to reimburse expenses incurred in providing these services.

## 28 U.S.C. § 612. Judiciary Information Technology Fund

(a) **Establishment and availability of Fund.**--There is hereby established in the Treasury of the United States a special fund to be known as the "Judiciary Information Technology Fund" (hereafter in this section referred to as the "Fund"). Moneys in the Fund shall be available to the Director without fiscal year limitation for the procurement (by lease, purchase, exchange, transfer, or otherwise) of information technology resources for program activities included in the courts of appeals, district courts, and other judicial services account of the judicial branch of the United States. The Fund shall also be available for expenses, including personal services, support personnel in the courts and in the Administrative Office of the United States Courts, and other costs, for the effective management, coordination, operation, and use of information technology resources purchased by the Fund. In addition, all agencies of the judiciary may make deposits into the Fund to meet their information technology needs in accordance with subsections (b) and (c)(2).

(b) **Plan for meeting information technology needs.**--

**(1) Development of plan.**--The Director shall develop and annually revise, with the approval of the Judicial Conference of the United States, a long range plan for meeting the information technology resources needs of the activities funded under subsection (a) and shall include an annual estimate of any fees that may be collected under section 404 of the Judiciary Appropriations Act, 1991 (Public Law 101-515; 104 Stat. 2133). Such plan and revisions shall be submitted to Congress.

**(2) Expenditures consistent with plan.**--The Director may use amounts in the Fund to procure information technology resources for the activities funded under subsection (a) only in accordance with the plan developed under paragraph (1).

(c) **Deposits into Fund.**--

**(1) Deposits.**--There shall be deposited in the Fund--

**(A)** all proceeds resulting from activities conducted under subsection (a), including net proceeds of disposal of excess or surplus property, all fees collected after the date of the enactment of the Judicial Amendments Act of 1994 by the judiciary under section 404 of the Judiciary Appropriations Act, 1991 (Public Law 101-515; 104 Stat. 2133) and receipts from carriers and others for loss of or damage to property;

**(B)** amounts available for activities described in subsection (a) from funds appropriated to the judiciary; and

**(C)** any advances and reimbursements required by paragraph (2).

**(2) Advances and reimbursements.**--Whenever the Director procures information technology resources for any entity in the judicial branch other than the courts or the Administrative Office, that entity shall advance or reimburse the Fund, whichever the Director considers appropriate, for the costs of the information technology resources, from appropriations available to that entity.

**(d) Authorization of appropriations.**--There are authorized to be appropriated to the Fund for any fiscal year such sums as are required to supplement amounts deposited under subsection (c) in order to conduct activities under subsection (a).

**(e) Contract authority.--**

**(1) For each fiscal year.**--In fiscal year 1990, and in each succeeding fiscal year, the Director may enter into contracts for the procurement of information technology resources in amounts which, in the aggregate, do not exceed amounts estimated to be collected under subsection (c) for that fiscal year in advance of the availability of amounts in the Fund for such contracts.

**(2) Multiyear contracts.**--In conducting activities under subsection (a), the Director is authorized to enter into multiyear contracts for information technology resources for periods of not more than five years for any contract, if--

**(A)** funds are available and adequate for payment of the costs of such contract for the first fiscal year and for payment of any costs of cancellation or termination of the contract;

**(B)** such contract is in accordance with the Director's authority in section 604(g) of 28 U.S.C.; and,

**(C)** the Director determines that--

**(i)** the need for the information technology resources being provided will continue over the period of the contract; and

**(ii)** the use of the multi-year contract will yield substantial cost savings when compared with other methods of providing the necessary resources.

**(3) Cancellation costs of multiyear contract.**--Any cancellation costs incurred with respect to a contract entered into under paragraph (2) shall be paid from currently available amounts in the Fund.

**(f) Authority of Administrator of General Services.**--Nothing in this section shall be construed to limit the authority of the Administrator of General Services under sections 501-505 of title 40.

**(g) Annual report.--**

   **(1) In general.**--The Director shall submit to the Congress an annual report on the operation of the Fund, including on the inventory, use, and acquisition of information technology resources from the Fund and the consistency of such acquisition with the plan prepared under subsection (b). The report shall set forth the amounts deposited into the Fund under subsection (c).

   **(2) Additional contents of report.**--The annual report submitted under this subsection shall include--

      **(A)** the specific actions taken and the progress made to improve the plan developed under subsection (b) and the long range automation plan and strategic business plan developed under subsection (k); and

      **(B)** a comparison of planned Fund expenditures and accomplishments with actual Fund expenditures and accomplishments, and the reasons for any delays in scheduled systems development, or budget overruns.

**(h) Reprogramming.**--The Director of the Administrative Office of the United States Courts, under the supervision of the Judicial Conference of the United States, may transfer amounts up to $1,000,000 from the Fund into the account to which the funds were originally appropriated. Any amounts transferred from the Fund in excess of $1,000,000 in any fiscal year may only be transferred by following reprogramming procedures in compliance with section 606 of the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1989 (Public Law 100-459, 102 Stat. 2227).

**(i) Appropriations into the Fund.**--If the budget request of the judiciary is appropriated in full, the amount deposited into the Fund during any fiscal year under the authority of subsection (c)(1)(B) will be the same as the amount of funds requested by the judiciary for activities described in subsection (a). If an amount to be deposited is not specified in statute by Congress and if the full request is not appropriated, the amount to be deposited under subsection (c)(1)(B) will be set by the spending priorities established by the Judicial Conference.

**(j) Long range management and business plans.**--The Director of the Administrative Office of the United States Court shall--

   **(1)** develop an overall strategic business plan which would identify the judiciary's missions, goals, and objectives;

**(2)** develop a long range automation plan based on the strategic business plan and user needs assessments;

**(3)** establish effective Administrative Office oversight of court automation efforts to ensure the effective operation of existing systems and control over developments of future systems;

**(4)** expedite efforts to complete the development and implementation of life cycle management standards;

**(5)** utilize the standards in developing the next generation of case management and financial systems; and

**(6)** assess the current utilization and future user requirements of the data communications network.